JUDITH A. PRENDERGAST, Plaintiff-Appellee, *v.* RUSH-PRESBYTERIAN-ST. LUKE'S MEDICAL CENTER *et al.*, Defendants-Appellants.

First District (3rd Division)    No. 77-1465

Opinion filed June 6, 1979.—Modified on denial of rehearing November 28, 1979.

Gardner, Carton & Douglas, of Chicago (Elliot M. Schnitzer and Michael J. Koenigsknecht, of counsel), for appellants.

William J. Harte, Ltd., and Kevin M. Forde, Ltd., both of Chicago, for appellee.

Mr. JUSTICE JIGANTI delivered the opinion of the court:

This is an appeal from an order which granted a petition under section 72 of the Illinois Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 72) filed by the plaintiff, Judith A. Prendergast. The petition sought to vacate a consent order which dismissed her suit against the defendants, Rush-Presbyterian-St. Luke's Medical Center (Rush-Presbyterian), Rush University, Joann Jamann, Betty Tarsitano and Myra Levine, and to reinstate her original cause of action against them.

Subsequent to the filing of Prendergast's petition, Rush-Presbyterian made a motion for a change of venue as of right, making a general allegation of prejudice. The trial court granted the motion only after it ruled on the section 72 petition. On appeal, Rush-Presbyterian contends that its motion for a change of venue deprived the trial court of jurisdiction over the section 72 petition and that, in any event, the petition did not meet the requirements for section 72 relief.

On April 6, 1977, Prendergast filed a complaint against the defendants alleging that they unfairly denied her the right to continue her education for a master's degree in nursing. Her complaint recounted that she was a graduate nursing student at Rush University needing three courses to receive her degree: N-511, N-512 and N-513. As a student in N-511, the first course of the sequence, she submitted two papers and was given a grade of "A" on the first paper and a grade of "F" on the

second paper. She received a failing grade for the course. The school refused to permit her to enroll in N-512, the next course required for graduation. The complaint sought a grade of "C" for the N-511 course, an injunction enjoining Rush-Presbyterian from preventing her continued study and a temporary restraining order permitting her to participate in the N-512 class during the time an administrative review of her grade in N-511 was conducted within the University. The University agreed to the last request and no formal temporary restraining order was entered.

A hearing was held on the matter by the University and on April 22, 1977, its faculty senate determined that "C" was the proper grade for Prendergast's work in the N-511 course. On May 18, 1977, the trial court entered the following order:

"This matter having come on for hearing before the Court on May 3, 1977, and counsel for the herein named defendants having represented:

1. That the permanent grade for the course N-511 shall be a grade of "C";

2. That the remaining courses to be completed by the plaintiff in order to fulfill the requirements for graduation are courses N-512 and N-513;

3. That the Plaintiff has been reinstated as a student in the Graduate Program, College of Nursing; and

4. That in the continuation of her graduate studies, the plaintiff shall be treated in the same manner and graded pursuant to the same stated standards and requirements as those imposed upon all other graduate students in the College of Nursing.

And the Court having been fully advised of the premises; and the plaintiff having agreed, on the basis of the foregoing, to voluntarily dismiss this cause.

NOW, there, IT IS ORDERED that the herein cause shall be, and hereby is, dismissed without prejudice and without cost to either party."

Prendergast entered the N-512 class and received a "D" as a final grade. All other students in the N-512 class received grades of "A" or "B." On July 11, 1977, Prendergast filed the petition under section 72, with an amended complaint, alleging that Rush-Presbyterian had induced her to dismiss her original suit by fraudulent misrepresentation and that it had violated the consent order. She submitted an affidavit supporting the petition.

■■ Rush-Presbyterian argues that Prendergast's petition was improvidently granted because the requirements for section 72 relief have not been met in this case. Initially, the contentions are directed at the recitation in the consent order which dismisses the cause "without

prejudice." Rush-Presbyterian suggests that this language makes the order a "voluntary dismissal," over which the trial court has no jurisdiction and cites *Bettenhausen v. Guenther* (1944), 388 Ill. 487, 58 N.E.2d 550. The court there held:

> "[W]here a voluntary nonsuit has been taken upon motion of a plaintiff, the court has no power to set aside the order of dismissal and reinstate the cause unless, at the time the nonsuit is taken, leave is given the plaintiff to move to set it aside. The reason for the rule is that if a plaintiff, by his deliberate and voluntary act, secures a dismissal of his suit, he must be held to have anticipated the effect and necessary results of his action and should not be restored to the position and the rights which he voluntarily abandoned. Having taken a nonsuit, his only recourse is to begin his action anew." 388 Ill. 487, 489, 58 N.E.2d 550, 551-52.

In *Nashlund v. Savade* (1976), 39 Ill. App. 3d 139, 350 N.E.2d 90, the parties agreed to an order dismissing a case "without prejudice to refile" under the misapprehension that the case was filed in the wrong court and the plaintiff would immediately file it in the correct court. When the plaintiff attempted to refile the case, the defendant pleaded the statute of limitations. The plaintiff petitioned to reopen the original cause under section 72. The defendant argued that the first order was a voluntary dismissal and not cognizable under section 72. The *Nashlund* court held that the facts indicated that the order was not a voluntary nonsuit but an "agreed upon dismissal" which, under these conditions, removed it from the rule articulated in *Bettenhausen*. 39 Ill. App. 3d 139, 144-45, 350 N.E.2d 90, 95.

We find the facts in this case similarly indicative of an agreed upon dismissal as opposed to a voluntary dismissal. The fact that the order is a consent agreement strongly demonstrates the intent of the parties to agree to dismiss the cause under specific conditions. This situation does not fall within what *Bettenhausen* would describe as a voluntary abandonment of rights by a party and the rule in *Bettenhausen* should not be applied.

■■ Rush-Presbyterian also argues that the "without prejudice" language of the consent order gives it an interlocutory nature and that section 72 is only applicable to orders which are final. In Illinois to be considered final an order must dispose of the merits of the case in such a manner that "no further proceedings can be had" in the trial court. (*Dowdall v. Hutchens* (1932), 347 Ill. 326, 327, 179 N.E. 858, 859.) We find that, consistent with the language in *Dowdall*, there was no further action in this proceeding which Prendergast could have taken in the trial court to relieve her from the effects of the consent order.

Rush-Presbyterian's other contentions relate to the sufficiency of the allegations in Prendergast's petition concerning fraud. Rush-Presbyterian

argues that section 72 relief is only appropriate upon the presentation of facts antedating the contested order which would have prevented its rendition. Rush-Presbyterian alleges that the events complained of in the section 72 petition occurred subsequent to the consent order, making section 72 relief unavailable in this case.

■■ In Illinois, a section 72 petition cannot be based on events which occur subsequent to the entry of the order from which relief is sought. (*Russell v. Klein* (1974), 58 Ill. 2d 220, 319 N.E.2d 745.) However, in this case Prendergast predicates her petition on allegations of fraud and misrepresentation which, according to Prendergast, occurred prior to the rendition of the consent order. Under such circumstances, section 72 is an applicable remedy.

■■ Rush-Presbyterian also states that Prendergast's section 72 petition fails because it does not state a sufficient cause of action for fraud, citing several cases which set out the requirements that a complaint must meet to state a cause of action. We believe Rush-Presbyterian misapprehends the requirements of section 72. The adequacy of a section 72 petition is not always tested by the same standards as the adequacy of a cause of action in a complaint. Section 72 requires that the petition allege a right to the relief sought in it by stating a cause of action *or* through the introduction of facts which would have prevented the entry of the order questioned. (*Glenn v. People* (1956), 9 Ill. 2d 335, 135 N.E.2d 336; *Brockmeyer v. Duncan* (1960), 18 Ill. 2d 502, 165 N.E.2d 294.) We cannot say that if it were known that the defendants misrepresented their position in the settlement as alleged, the consent order would have been entered. Therefore, we find that the allegations in Prendergast's petition, along with the amended complaint, meet the standards for stating a right to relief under section 72.

■■■ On July 11, 1977, the court entered an order setting for hearing on July 14, both Rush-Presbyterian's motion for a change of venue and Prendergast's petition under section 72. On July 14, before making any ruling, the court heard extensive arguments. At no time during those arguments, or even after the court's subsequent orders, did Rush-Presbyterian suggest that a hearing be held to determine if any of the allegations made by Prendergast were true. A party may not be permitted to raise objections on appeal which were not urged at the trial level. (*Town of Cicero v. Industrial Com.* (1949), 404 Ill. 487, 89 N.E.2d 354.) We believe that there was sufficient factual support for the court's grant of the section 72 petition.

■■ Finally, we must reject Rush-Presbyterian's contention that the trial court was bound to rule on its motion for a change of venue before considering Prendergast's section 72 petition. *Kilbride v. Kilbride* (1965), 64 Ill. App. 2d 355, 212 N.E.2d 252, held that when a section 72 petition is predicated on facts which occurred prior to the rendition of the contested order and involves perception by the trial judge of whether his knowledge of the facts would have prevented entry of the order, the statutory provisions which permit a change of venue as of right are inapplicable. (See Ill. Rev. Stat. 1977, ch. 110, pars. 501-36.) As discussed above, since Prendergast petition sufficiently alleges such facts, the trial court did not have to consider first the motion for a change of venue based on a general allegation of prejudice. See *Rosewood Corp. v. Transamerica Insurance Co.* (1974), 57 Ill. 2d 247, 311 N.E.2d 673.

The order granting the section 72 petition, vacating the consent order and reinstating Prendergast's original cause of action is, therefore, affirmed.

Affirmed.

SIMON, P. J., and McNAMARA, J., concur.